1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11  EUGENE GEERLOF, BRADLEY                   No.  2:13-cv-02175-MCE-KJN
    MOORE, BENJAMIN TILOS, JR.,
12  SEAN ROBERTS, TIMOTHY
    RAUSCH, SUE GUNTER, ROTHELL
13  WILLIAMS, MANUEL VALDE, JR., and          **MEMORANDUM AND ORDER**
    JAMES E. WOEHRLE,
14
                Plaintiffs,
15
          v.
16
    C&S WHOLESALE GROCERS, INC.,
17  a Vermont Corporation, Tracy
    Logistics, LLC, an unknown business
18  entity, and DOES 1 through 100,
    inclusive,
19
                Defendants.
20

21

22          Through this action, Plaintiffs Eugene Geerlof, Bradley Moore, Benjamin Tilos, Jr.,

23  Sean Roberts, Timothy Rausch, Sue Gunter, Rothell Williams, Manuel Valdes, Jr., and

24  James E. Woehrle (collectively "Plaintiffs") seek relief from Defendants C&S Wholesale

25  Grocers, Inc. ("C&S") and Tracy Logistics, LLC ("Tracy Logistics") (collectively

26  "Defendants") for violations of the California Labor Code and California's Unfair

27  Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.  Plaintiff originally filed his

28  Complaint in the Superior Court of California, County of Los Angeles.  On September 6,

                                            1

1   2013, Defendants removed the case to the United States District Court for the Central

2   District of California, pursuant to the Court's diversity jurisdiction.  On October 18, 2013,

3   the case was transferred to the Eastern District of California, and on October 24, 2013,

4   the case was reassigned to Chief Judge England.  On December 9, 2013, Plaintiffs filed

5   an Amended Notice of Motion, ECF No. 35, regarding Plaintiffs' Motion for Remand

6   ("Motion"), ECF No. 20.  Subsequently, Defendants filed a Motion to Supplement/Amend

7   Notice of Removal, ECF No. 39, which Plaintiffs do not oppose, see ECF No. 42.

8        For the reasons set forth below, Plaintiff's Motion to Remand is DENIED, and

9   Defendants' Motion to Supplement/Amend Notice of Removal is GRANTED.[1]

10

11                      **BACKGROUND[2]**

12

13        Defendant Tracy Logistics employed Plaintiffs Eugene Geerlof, Bradley Moore,

14   Benjamin Tilos, Jr., Sean Roberts, Timothy Rausch, Sue Gunter, Rothell Wililams,

15   Manuel Valdes, Jr., and James E. Woehrle as Warehouse Supervisors at its Stockton

16   Facility.  Plaintiff Geerlof was employed in this position from approximately April 2012 to

17   approximately December 2012; Moore, from July to September 2011; Tilos, from April

18   2011 to April 2013; Roberts, from August 2008 to December 2010; Rausch, from

19   November 2010 to the present; Gunter, from September 1996 to the present; Wililams,

20   from February 2011 to the present; Valdes, from August 2011 to the present; and

21   Woehrle, from June 2006 to October 2009.

22        Generally speaking, Plaintiffs allege that they were hired by Defendants,

23   misclassified as "exempt" employees, and paid on a salary basis without any

24   compensation for overtime hours worked, missed meal periods, or rest breaks.

25   ///

26             ———————————

27        [1] Because oral argument would not be of material assistance, the Court ordered these matters submitted on the briefs pursuant to E.D. Cal. Local Rule 230(g).

28        [2] The following recitation of facts is taken, sometimes verbatim, from Plaintiffs' Complaint.

1          Plaintiffs further claim that they worked over eight hours per day, and/or more

2    than forty hours per week during the course of their employment with Defendants.

3    According to Plaintiffs, although Defendants knew or should have known that they were

4    entitled to receive certain wages as overtime compensation, they did not receive such

5    wages.  Plaintiffs also assert that they did not receive all their rest and meal periods; nor

6    did they receive one additional hour of pay when they missed a meal period.

7    Additionally, while Defendants knew or should have known that Plaintiffs were entitled to

8    receive at least minimum wages as compensation, they did not receive at least minimum

9    wages for all hours worked.

10          Plaintiffs further allege that they were entitled to timely payment of all wages

11   during their employment and to timely payment of wages earned upon termination of

12   their employment, but he did not receive timely payment of these wages either during

13   their employment or upon termination.  Likewise, Defendants did not provide Plaintiffs

14   with complete and accurate wage statements, although Defendants knew or should have

15   known that Plaintiffs were entitled to these statements.

16          Plaintiffs also assert that Defendants failed to keep complete and accurate payroll

17   records.  Finally, Defendants falsely represented to Plaintiffs that the wage denials were

18   proper.  Instead, according to Plaintiffs, these wage denials were improper and served

19   the purpose of increasing Defendants' profits.

20          These claims were brought by a different plaintiff in a class action in state court,

21   Tompkins v. C&S Wholesale Grocers, Inc., on February 3, 2011.[3]  On March 14, 2011,

22   the defendants in the Tompkins action removed the case to federal court, asserting

23   diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  The Tompkins plaintiff then moved

24   to remand the case, on the grounds that the operative complaint alleged an amount in

25   controversy below the $75,000 threshold.  The Court granted the plaintiff's motion to

26   remand, finding that there was insufficient evidence to show that the amount in

27   _____

28          [3] All facts relating to the Tompkins action are taken from Defendants' Opposition to Plaintiff's
Motion to Remand.  ECF No. 22.

3

controversy for the plaintiff's individual claims exceeded $75,000.  The defendants again removed the case to federal court on October 26, 2011, based on discovery conducted prior to that date.  The <u>Tompkins</u> plaintiff again moved to remand, and the Court again granted the plaintiff's motion on the grounds that the defendants had not met their burden of proving that the amount in controversy on the plaintiff's individual claims exceeded the jurisdictional threshold.

On June 15, 2012, after the Court remanded the case a second time, the <u>Tompkins</u> defendants deposed the named plaintiff in that case, David Tompkins.  On September 21, 2012, the defendants offered Mr. Tompkins a Joint Offer to Compromise under California Civil Procedure Code § 998(b)(2), in the amount of $75,001.00.  Mr. Tompkins accepted the Joint Offer on October 3, 2012.

The subject wage and hour claims were subsequently brought in a new class action, <u>Bicek v. C&S Wholesale Grocers, Inc.</u>, No. 13-cv-00411, on behalf of the same putative class.  <u>Bicek</u>, which is also before this Court, is a class action which this Court has jurisdiction over pursuant to the Class Action Fairness Act.

**STANDARD**

### A.    Supplement Notice of Removal

28 U.S.C. § 1446 allows a defendant to remove an action to federal court within thirty days from the date of receipt of a copy of the initial pleading.  It is well settled that the defendant's notice of removal may be amended freely prior to the expiration of this initial thirty-day period.  <u>Smiley v. Citibank (S. Dakota), N.A.</u>, 863 F. Supp. 1156, 1158 (C.D. Cal. 1993) (citing <u>Richardson v. United Steelworkers of Am.</u>, 864 F.2d 1162, 1159 (5th Cir. 1989), <u>cert. denied</u>, 495 U.S. 946 (1990)).  "After the first thirty days, however, the cases indicate that the petition may be amended only to set out more specifically grounds for removal that already have been stated, albeit imperfectly, in the original petition; new grounds may not be added and missing allegations may not be furnished."

4

1  Id. at 1159 (citing 14A C. Wright, A. Miller, E. Cooper, Federal Practice & Procedure

2  § 3733 (2d ed. 1985)).  "The majority of courts, for example, allow defendants to amend

3  'defective allegations of jurisdiction' in their notice as long as the initial notice of removal

4  was timely filed and sets forth the same legal grounds for removal."  Id. (citing Barrow

5  Dev. Co. v. Fulton Ins. Co., 418 F.2d 316, 318 (9th Cir. 1969) (permitting amendment of

6  removal petition to cure inadequate allegation of the citizenship of the defendant

7  corporation)).  "If the removing party seeks to cure a defect in the removal petition after

8  the thirty day period has elapsed . . . the court has discretion to prohibit such an

9  amendment."  Hemphill v. Transfresh Corp., No. C–98–0899–VRW, 1998 WL 320840,

10  at *4 (N.D. Cal. June 11, 1998).

11       **B.    Remand**

12       There are two bases for federal subject matter jurisdiction: (1) federal question

13  jurisdiction under 28 U.S.C. § 1331 and (2) diversity jurisdiction under 28 U.S.C. § 1332.

14  A district court has federal question jurisdiction in "all civil actions arising under the

15  Constitution, laws, or treaties of the United States."  Id. § 1331.  A district court has

16  diversity jurisdiction "where the matter in controversy exceeds the sum or value of

17  $75,000, . . . and is between citizens of different states, or citizens of a State and citizens

18  or subjects of a foreign state . . . ."  Id. § 1332(a)(1)-(2).  Diversity jurisdiction requires

19  complete diversity of citizenship, with each plaintiff being a citizen of a different state

20  from each defendant.  28 U.S.C. § 1332(a)(1); Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68

21  (1996) (stating that complete diversity of citizenship is required).

22       When a party brings a case in state court in "which the district courts of the United

23  States have original jurisdiction," the defendant may remove it to the federal court

24  "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  "The party

25  invoking the removal statute bears the burden of establishing federal jurisdiction."

26  Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v.

27  Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)).  Under § 1141, any state-

28  court action that originally could have been filed in federal court may be removed by the

5

1  defendant.  City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 163 (1997) (citing
2  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)).

3          In an action involving multiple plaintiffs, a federal court may exercise
4  supplemental jurisdiction over a co-plaintiff's claims that fail to meet the jurisdictional
5  amount in controversy if (1) at least one plaintiff satisfies the amount in controversy,
6  (2) the other elements of diversity jurisdiction are satisfied, and (3) the plaintiff's claims
7  are part of the same "case or controversy."  See Exxon Mobil Corp. v. Allapattah Servs.,
8  Inc., 545 U.S. 546, 549 (2005) ("We hold that, where the other elements of jurisdiction
9  are present and at least one named plaintiff in the action satisfies the amount-in-
10 controversy requirement, § 1367 does authorize supplemental jurisdiction over the
11 claims of other plaintiffs in the same Article III case or controversy, even if those claims
12 are for less than the jurisdictional amount specified in the statute setting forth the
13 requirements for diversity jurisdiction.").  To determine whether the claims are part of the
14 same case or controversy, the Court examines whether the claims involve a "common
15 nucleus of operative fact."  See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725
16 (1966) (requiring a "common nucleus of operative fact" to confer supplemental
17 jurisdiction over pendant state law claims).

18         A motion to remand is the proper procedure for challenging removal.  "The party
19 invoking the removal statute bears the burden of establishing federal jurisdiction."
20 Ethridge, 861 F.2d at 1393 (internal citations omitted).  Courts "strictly construe the
21 removal statute against removal jurisdiction."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th
22 Cir. 1992) (internal citations omitted).  "[I]f there is any doubt as to the right of removal in
23 the first instance," the court must grant the motion for remand.  Id.  Additionally, "[i]f at
24 any time before final judgment it appears that the district court lacks subject matter
25 jurisdiction, the case shall be remanded" to state court.  28 U.S.C. § 1447(c).
26 ///
27 ///
28 ///

6

1                                 **ANALYSIS**

2

3           **A.**        **Supplement Notice of Removal**

4         Defendants seek to amend or supplement their Notice of Removal to include new

5 allegations and evidentiary support recently obtained through Defendants' deposition of

6 Plaintiffs Susan Gunter, Rothell Williams, and Manuel Valdes, Jr., which were taken after

7 the Notice of Removal was filed and after Plaintiffs' Motion to Remand was fully briefed.

8         As set forth above, "[t]he majority of courts . . . allow defendants to amend

9 'defective allegations of jurisdiction' in their notice as long as the initial notice of removal

10 was timely filed and sets forth the same legal grounds for removal." <u>Smiley</u>,

11 863 F. Supp. at 1159 (citing <u>Barrow</u>, 418 F.2d at 318) (permitting amendment of removal

12 petition to cure inadequate allegation of the citizenship of the defendant corporation).

13 However, when defendants attempt to assert totally new grounds for removal or "to

14 create jurisdiction where none existed," courts uniformly deny leave to amend. <u>Rockwell</u>

15 <u>Int'l Credit Corp. v. U.S. Aircraft Ins. Grp.</u>, 823 F.2d 302, 304 (9th Cir. 1987), <u>overruled</u>

16 <u>on another ground by Partington v. Gedan</u>, 923 F.2d 686 (9th Cir. 1991).  Indeed, courts

17 frequently repeat the <u>Barrow</u>'s statement that "the removal petition cannot be . . .

18 amended to add allegations of substance but solely to clarify 'defective' allegations of

19 jurisdiction previously made."  418 F.2d at 317; <u>see also</u> <u>Emeryville Redev. Agency v.</u>

20 <u>Clear Channel Outdoor</u>, No. C 06-01279 WHA, 2006 WL 1390561, at *3 (N.D. Cal.

21 May 22, 2006) (discussing "allegations of substance" rule); <u>Hemphill</u>, 1998 WL 320840

22 at *4 (citing <u>Barrow</u>, 418 F.2d at 317); <u>Nat'l Audobon Soc. v. Dep't of Water & Power of</u>

23 <u>City of L.A.</u>, 496 F. Supp. 499, 503 (E.D. Cal. 1980) (same).  In <u>Barrow</u>, the defendant's

24 removal notice alleged "simply that plaintiff was a citizen of Alaska and defendant of

25 New York," rather than "disclos[ing] both the state of incorporation and the location of the

26 corporation's principal place of business."  418 F.2d at 318.

27 ///

28 ///

1    The Ninth Circuit followed other circuit courts in holding that these "allegations [were]
2    defective in form but not so lacking in substance as to prevent their amendment." Id.
3    (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299 (10th Cir. 1968)).

4           Furthermore, when a defendant must show that the amount in controversy
5    exceeds the statutory amount, the defendant "may rely upon affidavits and declarations
6    to make that showing; the law in the Ninth Circuit expressly contemplates the district
7    court's consideration of some evidentiary record." Lewis v. Verizon Commc'ns, Inc.,
8    627 F.3d 395, 400 (9th Cir. 2010); see also Valdez v. Allstate Ins. Co., 372 F.3d 1115,
9    1117 (9th Cir. 2004) (court may consider "summary-judgment-type evidence relevant to
10   the amount in controversy at the time of removal"). While "[i]t is best to make this
11   showing in the notice of removal itself, . . . a party can supplement its showing in an
12   opposition to a motion to remand." Waller v. Hewlett-Packard Co., 11CV0454-LAB RBB,
13   2011 WL 8601207, at *2 (S.D. Cal. May 10, 2011) (citing Cohn v. Petsmart, Inc.,
14   281 F.3d 837, 840 n.1 (9th Cir. 2002)).

15          In Cohn v. Petsmart, the Ninth Circuit noted that "Petsmart's notice of removal
16   was deficient because it only summarily alleged that the amount in controversy
17   exceeded $75,000, without alleging any underlying facts to support this assertion."
18   281 F.3d at 843 (citing Gaus, 980 F.2d at 567). However, Petsmart's opposition to the
19   plaintiff's motion to remand provided further factual basis for the amount in controversy
20   alleged in the notice of removal, explaining that the $75,000 amount was based on the
21   plaintiff's settlement demand. The Ninth Circuit found that "the district court did not err in
22   construing Petsmart's opposition as an amendment to its notice of removal." Id. (citing
23   Willingham v. Morgan, 395 U.S. 402, 407 n.3 (1969) ("It is proper to treat the removal
24   petition as if it had been amended to include the relevant information contained in the
25   later-filed affidavits"); 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be
26   amended, upon terms, in the trial or appellate courts.")).

27   ///

28   ///

8

1    Subsequently, the Ninth Circuit stated that Cohn distinguished Gaus, and stands

2    for the proposition "that a district court may consider later-provided evidence as

3    amending a defendant's notice of removal." Gen. Dentistry For Kids, LLC v. Kool

4    Smiles, P.C., 379 F. App'x 634, 636 (9th Cir. 2010); see also Morella v. Safeco Ins. Co.

5    of Ill., 2:12-CV-00672 RSL, 2012 WL 2903084, at *1 (W.D. Wash. July 16, 2012) (citing

6    Cohn, 281 F.3d 837) ("[T]he post-removal submission of supporting evidence can be

7    treated as amending the notice of removal.").

8    Here, Defendants have not changed their grounds for removal from that they

9    originally asserted in the notice of removal—Defendants originally asserted diversity

10    jurisdiction and still assert only that removal on that basis. Cf. Rockwell Int'l Credit

11    Corp., 823 F.2d at 304. Defendants merely seek to supplement their original Notice of

12    Removal with facts that support this basis for jurisdiction. Furthermore, Defendants'

13    Notice of Removal is not so lacking in substance that it could not be amended or

14    supplemented with the information contained in Plaintiff's deposition. While it is true that

15    Defendants seek to amend their notice of removal not through evidence submitted in

16    opposition to a motion to remand, but through a separate noticed motion, the Court will

17    not "exalt form over substance and legal flaw-picking over the orderly disposition of

18    cases properly committed to federal courts." Piazza v. EMPI, Inc., 1:07-CV-00954-

19    OWW-GSA, 2008 WL 590494, at *8 (E.D. Cal. Feb. 29, 2008) (quoting Barrow, 418 F.2d

20    at 318).

21    For these reasons, and because Plaintiffs do not oppose the amendment,

22    Defendants' Motion to Amend/Supplement Notice of Removal is GRANTED, ECF

23    No. 39, and Defendants' Notice of Removal is amended to include the portions of

24    Plaintiffs' deposition testimony submitted by Defendants at ECF Nos. 39-2 and 39-3.

25    ///

26    ///

27    ///

28    ///

1

**B.     Remand**

2        Defendants removed the instant case pursuant to the Court's diversity jurisdiction.

3    As set forth above, a district court has diversity jurisdiction "where the matter in

4    controversy exceeds the sum or value of $75,000, . . . and is between citizens of

5    different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id.

6    § 1332(a)(1)-(2).

7                **1.     Citizenship**

8        Diversity jurisdiction requires complete diversity of citizenship, with each plaintiff

9    being a citizen of a different state from each defendant.  28 U.S.C. § 1332(a)(1);

10    Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996) (stating that complete diversity of

11    citizenship is required).

12        Here, it is clear that Plaintiffs are citizens of California.  The Complaint alleges

13    that each Plaintiff "is an individual residing in the State of California."  ECF No. 2 at 7.

14    The Notice of Removal also states that each Plaintiff was or is currently "employed as a

15    Warehouse Supervisor in the State of California at [Tracy Logistics LLC's] Stockton

16    Facility."  Additionally, the Notice of Removal cites the allegations in the Complaint that

17    each Plaintiff "is an individual residing in the State of California," and therefore concludes

18    that each Plaintiff "was domiciled in the State of California at the time he filed this action

19    and is a citizen of California for the purposes of diversity jurisdiction in this matter."  ECF

20    No. 1 at 7-9.

21        C&S is a corporation, and thus has dual citizenship for diversity purposes.  See

22    28 U.S.C. § 1332(c).  A corporation is a citizen both of the state where it was

23    incorporated and the state where it has its primary place of business.  Id.  Because C&S

24    is incorporated in Vermont with its principal place of business in New Hampshire, it is a

25    citizen of Vermont and New Hampshire for purposes of diversity jurisdiction.

26    ///

27    ///

28    ///

1   Next is the issue of Tracy Logistics' citizenship. For purposes of diversity

2   jurisdiction in a case removed pursuant to 28 U.S.C. § 1441, "like a partnership, an LLC

3   is a citizen of every state of which its owners/members are citizens." Johnson v.

4   Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) (citations

5   omitted). Defendants' removal papers make clear that Tracy Logistics is diverse from

6   Plaintiff. ECF No. 1 at 10. Tracy Logistics is owned by its sole member, C&S Logistics

7   of Sacramento/Tracy LLC, which in turn is wholly owned by its sole member, C&S

8   Acquisitions LLC. C&S Acquisitions LLC is wholly owned by its sole member, C&S

9   Wholesale Grocers, Inc., which is a citizen of both Vermont and New Hampshire. Id.

10  Tracy Logistics, like C&S Wholesale Grocers, Inc., is therefore a citizen of Vermont and

11  New Hampshire.

12   Thus, because Plaintiffs are citizens of California, while Defendants are citizens of

13  Vermont and New Hampshire, there is complete diversity between Plaintiffs and

14  Defendants.

15   **2.    Amount in Controversy**

16   **a.    Defendants' Burden**

17   Defendants contend that the standard for establishing the amount in controversy

18  is a preponderance of the evidence. Plaintiffs, on the other hand, assert that the Court

19  lacks jurisdiction because Plaintiffs allege that the amount in controversy for their

20  individual claims is less than $75,000 and Defendants have failed to prove with legal

21  certainty that the jurisdictional amount is met. Specifically, the Complaint states in the

22  Jurisdiction and Venue allegations that "the 'amount in controversy' for the named

23  Plaintiff, including claims for compensatory damages, restitution, penalties, and pro rata

24  share of attorneys' fees is less than [$75,000]." Compl. at 2. No specific amount is

25  stated in Plaintiff's prayer for relief. See Compl. at 18-22. The prayer for relief lists civil

26  and statutory penalties; reasonable attorneys' fees and costs of the suit; actual,

27  consequential, and incidental losses and damages; and other and further relief as the

28  Court deems just and proper.

1    For the reasons set forth in the Court's Order issued February 19, 2014, ECF

2 No. 24, in the related case Cagle v. C&S Wholesale Grocers, Inc., No. 2:13-cv-02134,

3 the Court finds that the standard for determining whether Defendants meet their burden

4 of establishing the amount in controversy is the preponderance of the evidence.  Under

5 this standard, "the removing party's burden is 'not daunting,' and defendants are not

6 obligated to 'research, state, and prove the plaintiff's claims for damages.'"  Behrazfar v.

7 Unisys Corp., 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (quoting Korn v. Polo Ralph

8 Lauren Corp., 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008)).  When a "[d]efendant's

9 calculations [are] relatively conservative, made in good faith, and based on evidence

10 wherever possible," the court may find that the "[d]efendant has established by a

11 preponderance of the evidence that the amount in controversy" is met.  Id. (citing Neville

12 v. Value City Dep't Stores, LLC., No. 07-cv-53-DRH, 2008 WL 2796661, *5-6 (S.D. Ill.

13 July 18, 2008); Eisler v. Med. Shoppe Int'l, Inc., No. 4:05CV2272 JCH, 2006 WL 415953,

14 *2 (E.D. Mo. 2006)).

15                          **b.     Amount in Controversy Calculations**

16    "The traditional rule is that multiple plaintiffs who assert separate and distinct

17 claims are precluded from aggregating them to satisfy the amount in controversy

18 requirement."  Urbino v. Orkin Servs. of California, Inc., 726 F.3d 1118, 1122 (9th Cir.

19 2013) (citing Troy Bank v. G.A. Whitehead & Co., 222 U.S. 39, 40 (1911)).  Accordingly,

20 the amount in controversy for each Plaintiff must be determined separately.  Should at

21 least one Plaintiff meet the $75,000 requirement, the Court may exercise its

22 supplemental jurisdiction over the claims of the remaining Plaintiffs.

23    Plaintiff Sue Gunter

24    Defendants contend that the amount in controversy for Gunter's overtime claim

25 alone exceeds $75,000.  Notice of Removal at 13.  According to Defendants, Gunter has

26 been employed as a warehouse supervisor at the Stockton facility for approximately 214

27 workweeks during the relevant time period, from July 30, 2009, to the present.  Her

28 average hourly rate during the relevant time period is $26.67.  However, the only

1   evidence offered in the Notice of Removal as to the hours worked by Gunter is the

2   deposition testimony of Dennis Bicek.

3       Defendants' amendment to the Notice of Removal, however, contains Gunter's

4   deposition testimony regarding the hours she worked as a Warehouse Supervisor.

5   Gunter states that beginning in June 2009, she started work around "4 o'clock in the

6   afternoon," and on average left work between 2:00 AM and 4:00 AM.  Gunter Dep.

7   35-36.  This shift was a five-day shift.  Id. 37:7-9.  Gunter followed this schedule for

8   "roughly a year and a half."  Id. 33:13.

9       Gunter then moved to an administrative position as a Warehouse Supervisor, in

10  approximately December 2010.  Gunter Dep. 33:11-22.  In the administrative position,

11  Gunter's shift started at 2:00 PM and finished "not till at least 2:00 AM, sometimes 3:00

12  or 4:00 AM."  Gunter Dep. 36:7-8.  That position lasted "approximately six months to a

13  year."  Id. 33:8-9.  The administrative position was a five-day shift.  Id. 37:10-12.

14      Thereafter, in either mid-2011 or late-2011, Gunter became a dock supervisor.  Id.

15  at 33-34.  As a dock supervisor, Gunter "started at 2:00 PM" and finished between

16  "2:00 to 4:00 AM."  Id. 36:13-15.  This position was also a five-day shift.  Id. 37:13-15. In

17  June 2012, Gunter again changed positions, to "OS&D on GDC."  Id. 24:13-16.  In that

18  position, Gunter worked the morning shift.  She arrived around 3:30 AM, and on average

19  left between 3:30 to 5:00 PM.  Id. 36:18-25.  In the beginning, this position was a

20  five-day shift, and "sometime in 2013" became a four-day shift.  Id. 37:16-25.  Finally, in

21  December 2013, Gunter moved back to being a warehouse supervisor in charge of the

22  lifts and receiving.  Id. 34:23-35:-4.  In this position, Gunter works Sunday through

23  Wednesday, 3:30 AM "till at least 3:30 or 5:00, 5:30 sometimes."  Id. 38:8-9.  On

24  average, Gunter finishes this shift at "probably about 4:00 to 4:30."  Id. 38:15.

25      Gunter also testified that she kept her own contemporaneous records of the time

26  that she worked each day.  These records are attached as Exhibit E to the Amendment

27  to Defendants' Notice of Removal.  ECF No. 39-3.  These records show clearly the hours

28  and weeks worked by Gunter from July 30, 2009, to December 2013.

Based on this evidence, the Court calculates the amount in controversy for August 2, 2009 through July 29, 2010 (52 weeks) as follows:

| Week | Hours Worked Overtime | Overtime $ Amount | Hours Worked Doubletime | Doubletime $ Amount |
|------|----------------------|-------------------|------------------------|---------------------|
| 8/2/2009 | 22.5 | 900 | 10.7 | 570.74 |
| 8/9/2009 | 18.75 | 750 | 9.08 | 484.33 |
| 8/16/2009 | 18 | 720 | 7.41 | 395.25 |
| 8/23/2009 | 8 | 320 | .83 | 44.27 |
| 8/30/2009 | 18.08 | 723.2 | 5.91 | 315.24 |
| 9/6/2009 | No hours worked-- vacation | | | |
| 9/13/2009 | 19.25 | 770 | 3.75 | 200.03 |
| 9/20/2009 | 19.67 | 786.80 | 1.5 | 80.01 |
| 9/27/2009 | 17.08 | 683.2 | 0 | 0 |
| 10/4/2009 | 19.58 | 783.2 | 3.66 | 195.22 |
| 10/11/2009 | 14.34 | 573.6 | 1.17 | 62.41 |
| 10/18/2009 | 16.5 | 660 | 3 | 160.02 |
| 10/25/2009 | 11.66 | 466.4 | 0 | 0 |
| 11/1/2009 | 16.58 | 663.2 | 0 | 0 |
| 11/8/2009 | 14.67 | 586.80 | 1.25 | 66.68 |
| 11/15/2009 | 20 | 800.00 | 4.46 | 237.90 |
| 11/22/2009 | 9.5 | 380 | 3.33 | 177.62 |
| 11/29/2009 | 11.5 | 460 | 1.66 | 88.54 |
| 12/6/2009 | 16 | 640 | 5.83 | 310.97 |
| 12/13/2009 | 15.75 | 630 | 3.58 | 190.96 |
| 12/20/2009 | 16 | 640 | 2.13 | 113.61 |
| 12/27/2009 | 18.75 | 750 | 1.83 | 97.61 |
| 1/3/2010 | 16 | 640 | .83 | 44.27 |

14

| | | | | |
|---|---|---|---|---|
| 1/10/2010 | 12 | 480 | 3.83 | 204.92 |
| 1/17/2010 | 11.75 | 470 | 1.92 | 102.41 |
| 1/24/2010 | 12 | 480 | 3.67 | 195.76 |
| 1/31/2010 | 12 | 480 | 4.34 | 231.50 |
| 2/7/2010 | 12 | 480 | 5.91 | 315.30 |
| 2/14/2010 | 11.83 | 473.2 | 2.25 | 120.02 |
| 2/21/2010 | 12 | 480 | 5.33 | 284.30 |
| 2/28/2010 | 12 | 480 | 5.58 | 297.64 |
| 3/7/2010 | 12 | 480 | 5.5 | 293.37 |
| 3/14/2010 | 12 | 480 | 1.94 | 103.48 |
| 3/21/2010 | 9.08 | 363.2 | 4.83 | 257.63 |
| 3/28/2010 | 10.75 | 430 | 3.67 | 195.76 |
| 4/4/2010 | 12 | 480 | 2.42 | 129.08 |
| 4/11/2010 | 12 | 480 | 3.75 | 200.03 |
| 4/18/2010 | 12 | 480 | 1.92 | 102.41 |
| 4/25/2010 | 8.75 | 350 | .58 | 30.94 |
| 5/2/2010 | 8 | 320 | 2.58 | 137.62 |
| 5/9/2010 | 11.08 | 443.2 | .08 | 4.27 |
| 5/16/2010 | 12 | 480 | 1.66 | 88.54 |
| 5/23/2010 | 12 | 480 | 3.07 | 163.75 |
| 5/30/2010 | 12 | 480 | 3.58 | 190.96 |
| 6/6/2010 | 12 | 480 | 5.41 | 288.57 |
| 6/13/2010 | 8 | 320 | 2.25 | 120.02 |
| 6/20/2010 | 8.58 | 343.2 | 2.24 | 119.48 |
| 6/27/2010 | 12.25 | 490 | 5.17 | 275.77 |
| 7/4/2010 | 4 | 160 | 1.92 | 102.41 |
| 7/11/2010 | 9.25 | 370 | 3.25 | 173.36 |

15

| | | | | |
|---|---|---|---|---|
| 7/18/2010 | 12.17 | 486.80 | 5.58 | 297.69 |
| 7/25/2010 | 13.5 | 544 | 1.83 | 97.61 |
| **Subtotal:** | | $27,290.00 | | $8,961.28 |
| **Total amount in controversy for August 2009-July 2010: $36,251** | | | | |

As set forth above, the amount in controversy for one year is $36,251 for Plaintiff's overtime claim.  Gunter's deposition testimony, as well as her time entries, for the dates following July 2010 show that Gunter worked substantially similar hours for the remainder of 2010, as well as the years 2011, 2012, and 2013.  Based on this evidence, the Court therefore finds that Defendants have shown by a preponderance of the evidence that the amount in controversy exceeds $75,000 for Gunter's overtime claim alone.  Moreover, Plaintiffs do not contest that the amount in controversy for Gunter's non-compliant wage statement claim is $4,000.  Plaintiffs also do not contest that the amount in controversy for their claims for failure to keep requisite payroll records is $500 per Plaintiff.  Accordingly, for Gunter, $4,500 of the alleged amount in controversy is uncontested.  Adding only the first year (August 2009- July 2010) of Gunter's overtime claim ($36,251) to the uncontested amount in controversy ($4,500) brings the amount in controversy for Gunter to $40,751.28.  Adding only one more year of similar overtime wages would bring the amount in controversy for Gunter's claims over $75,000.  The Court therefore finds that Defendants have shown by a preponderance of the evidence that the amount in controversy for Gunter is well over the jurisdictional threshold of $75,000.  The Court therefore has diversity jurisdiction over Gunter's claims.

<u>Plaintiffs Geerlof, Moore, Tilos, Roberts, Rausch, Williams, Valdez, and Woehrle</u>

Because Plaintiffs Geerlof, Moore, Tilos, Roberts, Rausch, Williams, Valdes, and Woehrle make allegations similar to Gunter, and submit similar evidence regarding their overtime claims, it is likely that they also meet the jurisdictional threshold.  However, it is

1  enough that Gunter's claims meet the jurisdictional threshold—Geerlof, Moore, Tilos,

2  Roberts, Rausch, Williams, Valdes, and Woehrle allege claims arising from the same

3  violations of law as Gunter, and all Plaintiffs worked for Defendants at their Stockton

4  Facility.  Because these Plaintiffs' respective claims are part of the same case or

5  controversy involved with Gunter's claims, the Court exercises supplemental jurisdiction

6  over the claims of Geerlof, Moore, Tilos, Roberts, Rausch, Williams, Valdez, and

7  Woehrle.

8

9                              **CONCLUSION**

10

11        For the reasons set forth above, Plaintiffs' Motion to Remand, ECF No. 20, is

12  DENIED, and Defendants' Motion to Amend/Supplement Notice of Removal, ECF

13  No. 39, is GRANTED.

14        IT IS SO ORDERED.

15  Dated:  April 11, 2014

16

17

18  _____
    MORRISON C. ENGLAND, JR., CHIEF JUDGE
19  UNITED STATES DISTRICT COURT

20

21

22

23

24

25

26

27

28

                              17